UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, As Subrogee of the TOWN OF WESTERLY | : <br> : <br> : |
| VS. | : <br> : |
| J. GALLANT ELECTRICAL SERVICES, INC. and THE HILLER COMPANIES, INC. d/b/a ADVANCED SAFETY SYSTEMS INTEGRATORS, INC. | : <br> : <br> : <br> : <br> : |
| VS. | :     C.A. No.: 1:22-cv-00123-MSM-LDA <br> : |
| PERIPHERAL MANUFACTURING INCORPORATED, Alias, PERIPHERALS INC., Alias, FIREAWAY, LLC, Alias, FIREAWAY, INC., Alias, JOHN DOE CORP. 1 THROUGH 10, JOHN DOE ENTITIES 1 THROUGH 10, and JOHN AND JANE DOE 1 THROUGH 10 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**DEFENDANT, FIREAWAY, INC.'S, MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION TO DISMISS DEFENDANT/THIRD-PARTY PLAINTIFF, J. GALLANT ELECTRICAL SERVICES, INC.'S FIRST AMENDED THIRD-PARTY COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Now comes Third-Party Defendant, Fireaway, Inc. ("Fireaway" or "Third-Party Defendant"), by and through undersigned counsel, hereby submits this Memorandum of Law in Support of its Renewed Motion to Dismiss for Lack of Personal Jurisdiction with respect to Defendant/Third-Party Plaintiff, J. Gallant Electrical Services, Inc.'s ("J. Gallant" or "Third-Party Plaintiff"), First Amended Third-Party Complaint, pursuant to the Federal Rules of Civil Procedure Rule 12(b)(2).  Pursuant to this Honorable Court's Text Order on December 4, 2023, the parties

1

have conducted limited jurisdictional discovery. Following jurisdictional discovery, the facts clearly establish that this Court lacks specific personal jurisdiction over Fireaway.

I. **JURISDICTIONAL FACTS**

Pursuant to the Court's Order on December 4, 2023, in which this Honorable Court granted J. Gallant's request for jurisdictional discovery, the parties made good-faith efforts to conduct discovery limited to the issue of Fireaway's contacts with the State of Rhode Island.[1] In that light, J. Gallant deposed Fireaway for a total of seven (7) hours. Mr. Keath Young, Chief Operations Officer (COO) of Fireaway was the 30(b)(6) designee on behalf of Fireaway, pursuant to Federal Rules of Civil Procedure Rule 30(b)(6). Mr. Young's deposition was taken on two separate days, on January 30, 2024 and February 2, 2024. *See generally* Exhibit A (Vol. I of Dep. of Keath Young) and Exhibit B (Vol. II of Dep. of Keath Young). In addition, J. Gallant also propounded ten (10) interrogatories to be answered along with ten (10) requests for production of documents. Fireaway timely complied with those requests. *See generally* Exhibit C (Fireaway's Responses to J. Gallant's Interrogatories). Mr. Young has been COO since approximately January of 2019. Prior to that, he held the position of Chief Financial Officer; he held this position from December of 2015 through January of 2019. *See* Exhibit C, no. 1.

Fireaway manufactures and distributes fire protection equipment globally. *See* Exhibit A, 15:21-16:3. Most of Fireaway's products are branded with the Stat-X brand. *See* Exhibit B, 107:14-17. Up until approximately 2017, Fireaway used a brand named Aero-K in some of their

---

[1] In its Order, the Court concluded that "it cannot exercise general jurisdiction over Fireaway because the record is clear that its contacts with Rhode Island are not so continuous and systematic as to render [it] essentially at home here." Furthermore, the Court correctly determined that "Fireaway is neither incorporated in nor has its principal place of business in Rhode Island and nothing here suggests that this is an exceptional case where nonetheless general jurisdiction is proper because it has business operations so substantial and such a nature as to render the corporation at home in Rhode Island."

2

products; Aero-K products were a popular purchase choice of Peripheral's. *Id*. at 108:1-4. To the best of Mr. Young's knowledge, Peripheral was the only distributor that purchased Aero-K products from Fireaway. *Id*. at 108:15-17. Fireaway sells its products to end users through a number of contracted distributors. Fireaway only sells its products to its distributors and a few large, select original equipment manufacturers (hereinafter "OEMs") with whom it has an agreement. *Id*. at 27:10-13. There are no OEMs located in Rhode Island to which Fireaway has sold its product. *Id*. at 24:4-7. Fireaway does not sell to the general public directly. *Id*. at 23:20-23; *see also* Exhibit B, 126:13-22. Fireaway partners with over 200 distributors globally. *See* Exhibit A, 26:6. Some of the distributors with territories in the United States include Peripheral Manufacturing, Inc., The Hiller Companies, Impact Fire Services, and Encore Fire Protection. *See* Exhibit C, No. 6. Encore Fire Protection (hereinafter "Encore") is a distributor located at 70 Bacon Street, Pawtucket, Rhode Island. *See* Exhibit J at 9. On or about October 17, 2014, Fireaway entered into a distributor agreement with Encore Fire Protection to distribute certain products in Connecticut, Rhode Island, and Massachusetts. *See id*. However, domestic distributors that contract with Fireaway generally have a territory that encompasses the entire United States. *See* Exhibit C at no. 6.

At issue in this matter is a product that was distributed by Peripheral Manufacturing, Inc. (hereinafter "Peripheral"). On or about July 20, 2006, Fireaway entered into a "Private Label Distributor Agreement" with Peripheral. *See* Exhibit E (2006 Agreement). The Agreement appointed Peripheral as the exclusive distributor of "Products," as defined in Article 3 of the Agreement. *Id*. at 1. The Agreement authorized Peripheral to sell Private labeled "Aero-K" fire suppression aerosol generators. *Id*. Peripheral's designated territory was the entire United States. *Id*. In the transaction at issue, Fireaway sold two (2) aero-K systems to Peripheral on or about

3

June 17, 2011. *See* Exhibit F (Fireaway Invoice). They were shipped to Peripheral's office in Denver, Colorado. *See id*. Thereafter, Peripheral sold and delivered the systems to Smith Automatic Sprinkler in South Windsor, Connecticut. *See* Exhibit G (Peripheral Invoice). The Peripheral invoice specified that Smith Automatic Sprinkler was to contract directly with the end user, Westerly High School, located in Westerly, Rhode Island.

Fireaway also had one employee from approximately September 2007 through April 2016 that resided in Rhode Island: Steve Janzen. *See* Exhibit C, at No. 10. Mr. Janzen was employed as the Global Senior Vice President. *Id*. He traveled extensively outside of the United States for his work. *Id*. His job duties were entirely outside of the state of Rhode Island. *Id*. Mr. Janzen was a remote employee, who simply resided in the state without conducting any business in the state. *Id*.

Fireaway does not and has never owned property in Rhode Island. *See* Exhibit A, 13:13-15. It has also not directly marketed any material in Rhode Island. *Id*. at 42:10-12. Generally, Fireaway places advertisements in trade magazines and in online materials; however, those efforts are not part of any direct marketing strategy set in Rhode Island. *Id*. at 43:13-18. Fireaway's agreement with Encore is not a part of a strategy to market in Rhode Island. Despite its location in Rhode Island, Fireaway has no knowledge of or control over Encore's subsequent sales once it purchases Fireaway's product, specifically about whether the product is sold in Rhode Island. *Id*. at 54:21-23.

Among all of its transactions, Fireaway's generated revenue from sales made to the State of Rhode Island garnered only less than one (1) percent...[2] Rhode Island revenue was measured

---

[2] Exhibit D to Fireaway's memorandum has been filed under seal in this matter. For exact numerical values of percentage of sales.

from invoices with ship to addresses in Rhode Island at the time of invoicing. In total, over the course of that thirteen-year period, sales to Rhode Island invoices accounted for only thirty-six (36) total transactions. In three (3) of the years—2010, 2012 and 2021—no sales were invoiced from Rhode Island.

## II.   PROCEDURE POSTURE

The facts giving rise to this lawsuit are well known to this Court. Plaintiff, Federal Insurance Company ("Federal") is the subrogee of the Town of Westerly, Rhode Island. *See* Exhibit H (J. Gallant's First Am. Third-Party Compl. (J. Gallant's Am. Compl.) ¶ 9). Defendant The Hiller Companies Inc. d/b/a Advanced Safety Systems Integrators, Inc. ("Advanced") was allegedly retained by the Town of Westerly to do renovations in the Town of Westerly for the School Department. *Id*. at ¶ 10. Thereafter, Advanced subcontracted with J. Gallant to replace the control panel for the system in the IT server room. *Id*. at ¶ 11. During the renovations, on September 3, 2020, Federal alleges that the system was discharged and caused property damage totaling over $300,000. *Id*. at ¶ 12. The damages included computer equipment, network equipment, serves, furniture, and other items in the server room.

Federal brought suit against J. Gallant and Advanced in United States District Court for the District of Rhode Island on March 25, 2022. *See generally* Exhibit I (Federal's Compl. And Jury Demand (Federal's Compl.)). Federal demanded judgment against Defendants in the amount of $323,236.26, including the payments made to the insured—Town of Westerly—and a $10,000 deductible. *Id*. at ¶ 16. Federal asserted that it is now subrogated to the insured's rights and claims against J.Gallant. *Id*. at ¶ 17. Thereafter, J Gallant brought their Third-Party Complaint and filed an Amended Complaint on August 4, 2023, against Fireaway and Peripheral Manufacturing, Inc. for Contribution and Indemnification. For the following reasons, Fireaway moves this Court to

dismiss those counts in J. Gallant's First Amended Third-Party Complaint for lack of personal jurisdiction.

### III. STANDARD OF REVIEW

The Due Process Clause of the Fourteenth Amendment limits a State's authority to bind a nonresident defendant to a judgment of its courts. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Under Federal Rules of Civil Procedure Rule 12(b)(2), the plaintiff must establish the existence of jurisdiction when confronted with a motion to dismiss for lack of personal jurisdiction. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.* 591 F.3d 1, 8 (1st Cir. 2009). When sitting in diversity jurisdiction, a federal court acts as the equivalent of a state court sitting in the forum state. *See id*. To obtain jurisdiction over a nonresident defendant, a plaintiff must allege facts to satisfy Rhode Island's "long-arm" statute and show that the exercise of personal jurisdiction complies with the requirements of due process. *Laccinole v. Gulf Coast Collection Bureau, Inc.*, No. 22-223-JJM-LDA, 2023 WL 157719, 1, *2 (Jan. 11, 2023) (slip copy) (citing *McKenney v. Kenyon Piece Dye Works, Inc.*, 582 A.2d 107, 108 (R.I. 1990)).

The Rhode Island long-arm statute states:

> "Every foreign corporation, every individual not a resident of this state or his or her executor or administrator, and every partnership or association, composed of any person or persons not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations and such nonresident individuals or their executors or administrators, and such partnerships or associations amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States." R.I.G.L. § 9-5-33(a).

Therefore, Rhode Island's long-arm statute is "coextensive" with the Due Process Clause, meaning that the Due Process analysis controls. *Franks v. Coopersurgical, Inc.*, C.A. No. 22-046-WES, 2024 WL 1109055, 1, *3 (D.R.I. March 14, 2024). The statute permits the exercise of

6

jurisdiction over nonresident defendants to the fullest extent allowed by the United States Constitution. *Rose v. Firstar Bank,* 819 A.2d 1247, 1250 (R.I. 2003).

## IV. ARGUMENT

Fireaway hereby incorporates by reference its arguments from its previous Memorandum of Law in support of its Motion to Dismiss for Lack of Personal Jurisdiction. Pursuant to this Court's Order dated December 4, 2023, this Court cannot assert general jurisdiction over Fireaway. Following the completion of jurisdictional discovery, the facts clearly show that this Court does not have specific jurisdiction over Fireaway.

The Due Process Clause of the Constitution requires that a nonresident defendant have "certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Company v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). The analysis includes a breakdown of the quality and quantity of the nonresident defendant's contacts with the forum state. *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999).

In its analysis of whether it can exercise specific jurisdiction, courts in the First Circuit are guided by a three-part test. *PREP Tours, Inc. v. American Youth Soccer Organization*, 913 F.3d 11, 17 (1st Cir. 2019). For a court to exercise specific personal jurisdiction, a plaintiff must show that (1) the claims directly arise out of or relate to the defendant's forum activities; (2) the defendant's contacts represent purposeful availment of the privileges of conducting activities in the forum states, where being haled into court is foreseeable; and (3) the exercise of jurisdiction is reasonable. *Knox v. MetalForming Inc.*, 914 F.3d 685, 690 (1st Cir. 2019); *see also PREP Tours, Inc.*, 913 F.3d at 17.

### a. The court cannot exercise specific jurisdiction over Fireaway.

### i. Plaintiff, Federal Insurance's, injuries do not arise or relate to defendant's forum contacts.

For a claim to "arise out of or relate to" a defendant's conduct, there must be a connection between the forum and the underlying controversy, where an activity or occurrence took place and is subject to that state's regulation. *Lorenzen v. Toshiba American Information Systems, Inc.*, 569 F.Supp. 109, 111-12 (D.R.I. 2021) (citing *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017, 1025 (2021); *see also Rodriguez-Rivera v. Allscripts Healthcare Solutions, Inc.*, 43 F.4th 150, 161 (1st Cir. 2022). The connection cannot seem attenuated or indirect. *Negron-Torres v. Verizon Communications, Inc.*, 478 F3d 19, 24-25 (1st Cir. 2007).

As the United States Supreme Court articulated in *Ford Motor Company v. Montana Eighth Judicial District Court*, the relatedness does not require a strict causal relationship, but also that it does not mean anything goes; there are "real limits." *Ford*, 141 S.Ct. at 1026. Relying on *World-Wide Volkswagen*, the *Ford* Court stated:

> "[i]f the sale of a product of a manufacturer or distributor is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has been the source of injury to its owner or to others." *Id*. at 1027 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

After jurisdictional discovery, J. Gallant still has not met its burden of proof to show that Fireaway has certain minimum contacts with the state of Rhode Island that arise out of or relate to its contacts with the forum. Fireaway's contacts with Rhode Island are isolated. Fireaway concedes that it contracted with distributor Encore Fire Protection, based in Pawtucket, Rhode Island, in 2014. *See* Exhibit C, no. 6; *see also* Exhibit A at 25:10-11; 47:21-48:7; *see also* Exhibit J. However, the transaction at issue did not involve Encore Fire Protection. In the alternative, this

transaction originated from Fireaway's distributor agreement with Peripheral, not Encore Fire Protection. The lawsuit here does not arise out of or relate to Fireaway's less than minimal contacts with Encore Fire Protection. The fact that Fireaway has a distributor agreement with Encore, who conducts business throughout the northeast, is not relevant to the analysis here because the Plaintiff's injury did not arise out of or relate to any of Fireaway's contacts with Rhode Island through Encore. *See* Exhibit B, at 145:24-146:9; *see also* Exhibit J (Encore Distributor Agreement) at 1.

Fireaway contracted with Peripheral, a distributor, to exclusively sell its Aero-K products in the United States. *See generally* Exhibit E. Fireaway sold two of its Aero-K systems to Peripheral and shipped it to Peripheral in Denver, Colorado. *See* Exhibit F. Peripheral then independently sold Fireaway's system, to Smith Automatic Sprinkler, out of South Windsor, Connecticut. *See* Exhibit G. From there, Smith Automatic Sprinkler contracted directly with the end user, Westerly High School, for sale and installation of the system. *See id*. Fireaway made no direct contact in Rhode Island with respect to this transaction. Fireaway only sold this product to a distributor based in Denver, Colorado. *See* Exhibit F. Peripheral then sold the product to a company based in Connecticut. More importantly, the 2011 Invoice from Peripheral to Smith Automatic Sprinkler indicates that Smith Automatic Sprinkler contracted directly with the end user, Westerly High School, for sale and installation services. *See id.* As Fireaway testified to at its deposition, Fireaway has no knowledge of, or control over, where its distributors sell the Fireaway products. *See* Exhibit A at 54:21-23. Fireaway never had a presence in Rhode Island with respect to this transaction, and the product was ultimately sold to an intermediary in Connecticut, who then directly contracted with the end user in Rhode Island for sale and installation. Fireaway simply placed its product in the stream of commerce, with a distributor with

9

a territory that encompassed the entire United States. Because the claim brought by J. Gallant did not arise out of or relate to any of Fireaway's forum state activities, specific jurisdiction does not arise.

### ii. Fireaway has not purposefully availed itself to conduct business in Rhode Island.

J. Gallant is also unable to establish that Fireaway has purposefully availed itself of the privileges of conducting business in the state of Rhode Island. *Knox,* 914 F.3d at 690. Linked to the relatedness prong, purposeful availment is satisfied for specific jurisdiction when a corporation or company "serves a market for a product in the forum State and the product malfunctions there." *Lorenzen,* 569 F.Supp.3d at 112 (quoting *Ford,* 141 S.Ct. at 1026). The purposeful availment prong assures that "'personal jurisdiction is not premised solely upon a defendant's "random, isolated, or fortuitous" contacts with the forum state.'" *Rodriguez-Rivera v. Allscripts Healthcare Solutions, Inc.*, 43 F.4th 150, 163 (1st Cir. 2022) (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995)). Therefore, the focus of the purposeful availment inquiry is on voluntariness and foreseeability. *Id*.

In addition, mere placement of a product in the stream of commerce with only the awareness that it could end up in the forum state is not enough to show purposeful availment. *Id*.; *see also Asahi Metal Industries Company v. Superior Court*, 480 U.S. 102, 112 (1987). To meet the purposeful availment prong, there must be additional conduct that indicates the defendant's intent to serve the market in the forum state. *Rodriguez-Rivera*, 43 F.4th at 163 (citing *Asahi Metal Industry Company*, 480 U.S. at 112.

In *J. McIntyre Machinery, Ltd. v. Nicastro*, the United State Supreme Court analyzed a stream of commerce case in a products liability action. There, the individual was injured while

using a metal-shearing machine that was manufactured by J. McIntyre Machinery, Ltd. (hereinafter "J. McIntyre"). 564 U.S. 873, 878 (2011). The accident occurred in New Jersey and the machine was manufactured in England. *Id*. The *J. McIntyre* Court discussed *Asahi*, where Justice Brennan stated in his concurring opinion that, the placement of a product in the stream of commerce, without more, is consistent with the Due Process Clause as long as a participant in the process is aware that the final product is being marketed in the forum State, and where the possibility of a lawsuit arising in that forum State does not come as a surprise. *Id*. at 883. The *J. McIntyre* Court concluded that the respondent in the case—the injured party—did not establish that J. McIntyre engaged in purposeful conduct that was directed at New Jersey. *Id*. at 886. The Court went further, stating that J. McIntyre had no offices in New Jersey, did not pay taxes in New Jersey, and did not advertise or send employees to New Jersey. *Id*. at 886. As such, the Court concluded that J. McIntyre did not purposely avail itself to the New Jersey market. *Id*.

In another United States Supreme Court case, the Court found that Minnesota and Montana could validly exercise specific jurisdiction over the nonresident defendant, Ford Motor Company (hereinafter "Ford"). *Ford*, 141 S.Ct. at 1032. In fact, the Court concluded that "resident-plaintiffs allege that they suffered in-state injury because of defective products that Ford extensively promoted, sold, and serviced in [the forum states]." *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Court focused on Ford's billboards, TV and radio spots, print ads, and direct mail to urge residents of the forum states to buy its vehicles. *Id*. at 1028.

Fireaway analogizes the facts here to the court's findings in *McIntyre*. In this case, Mr. Young denied that Fireaway made any direct attempts to market its products in Rhode Island. Exhibit A, at 42:3-16 ("We do not focus any material to Rhode Island."). There is no evidence that Fireaway made specific efforts to market this product or make continuous sales in Rhode Island.

11

Fireaway does place advertisements in trade magazines and online as well.  However, this "is not a direct marketing strategy" aimed at Rhode Island.  *See* Exhibit A, 43:15-21.  It is true that, in its distributor agreements, Fireaway retains a level of control over the territory that the distributor can market and sell Fireaway products.  *See* Exhibit B, at 203:8-19; *see also* Exhibit E at 1.  However, specifically to Fireaway's distribution agreement with Peripheral, the territory included the entire United States.  *See* Exhibit E at 1.  Fireaway had no knowledge that the product would end up in Rhode Island.  Furthermore, Peripheral then sold the products to another intermediary in Connecticut, Smith Automatic Sprinklers.  This attenuated connection does not purposely avail Fireaway to Rhode Island.

In addition, here, Fireaway's contacts with Rhode Island, at most, were random and isolated.  While Fireaway has made sales in Rhode Island, from the date of the sale of the system in 2011 to present, Rhode Island sales account for less than one (1) % of the company's overall sales revenue.[3]  A revenue share so minimal displays just how random and attenuated Fireaway's sales are in Rhode Island.  Fireaway therefore did not purposely availed itself to the privileges of conducting business in Rhode Island.  In addition, the total amount of sales in Rhode Island over the time period from 2011 to 2023 is thirty-six (36).  Fireaway distributes its products globally.  *See* Exhibit B, 207:2-6 ("Frankly, that's where most of our effort goes, yes.").  As stated previously, Fireaway exclusively contracted with a distributor, Peripheral, to make their sales throughout the United States, not specifically directed at Rhode Island.  Similar to J. McIntyre, Fireaway took no actions or efforts to increase its sales in Rhode Island or purposely avail itself directly to the Rhode Island market.

---

[3] For a detailed, entire breakdown of the revenue, please see Exhibit D, which was filed under seal pursuant to the Court's Order on July 10, 2024.

As stated above, Fireaway did not directly market its products in Rhode Island. Fireaway only maintains a website, and places ads in trade magazines. However, it is not a direct marketing strategy that is targeted at Rhode Island. *See* Exhibit A, 43:15-18. Fireaway's alleged business in Rhode Island in this case is vastly different from the contacts in *Ford*. Unlike in *Ford*, Fireaway did not and does not produce print ads, billboards. Fireaway admits that it did employ one employee who resided in both Rhode Island and Massachusetts between 2007 and 2016. *See* Exhibit C, at no. 10. However, Mr. Janzen's job duties were entirely out of Rhode Island. *See id*. He was a remote employee. His job title was the Global Senior Vice President. *Id*. Mr. Janzen did not serve as an agent or liaison for Fireaway to conduct business in Rhode Island. In fact, traveled extensively outside of the United States for work. This fact does not rise to a level of purposeful availment because Mr. Janzen did not conduct any business in Rhode Island; he was simply a remote employee who happened to reside in Rhode Island during his employment with Fireaway.

### iii. If the Court were to determine that Fireaway purposefully availed itself to Rhode Island, the litigation would be unreasonable because it offends the traditional notions of fair play and substantial justice.

The third prong of the personal jurisdiction analysis in the First Circuit is that the exercise of personal jurisdiction over the defendant must be fair and reasonable. *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 262 (1st Cir. 2022). In its evaluation, the court looks to (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantial social policies. *Burger King Corporation v. Rudzewicz*, 471

U.S. 462, 477 (1985); *see also C.W. Downer & Co. v. Bioriginal Food & Science Corp.*, 771 F.3d 59, 69 (1st Cir. 2014).

It would be unreasonable to Fireaway to have to litigate this matter in Rhode Island. As a corporation with a principal place of business in Minnesota, there is no direct connection between Fireaway and Rhode Island that would make it reasonable to adjudicate this matter in Rhode Island. The travel of employees and communications would impose a burden on Fireaway that makes it unreasonable. Any witnesses with direct knowledge of Fireaway's business with respect to this transaction will be required to travel from Minnesota to Rhode Island. Therefore, even if the Court were to determine that the action arose out of or related to Fireaway's contacts with Rhode Island and that Fireaway purposefully availed itself to the state, it would still be unreasonable to exercise personal jurisdiction over Fireway here in Rhode Island.

### V.  CONCLUSION

For the reasons set forth above, Third-Party Plaintiff cannot make a *prima facie* showing of specific jurisdiction. Fireaway lacks sufficient minimum contacts with the state of Rhode Island that would allow this Court to exercise specific jurisdiction over Fireaway. J. Gallant's extensive attempts to find specific jurisdiction fall short, as any contacts Fireaway had are isolated. As such, Fireaway requests that this Honorable Court dismiss Defendant/Third-Party Plaintiff J. Gallant's Complaint against Fireaway on all counts for lack of personal jurisdiction.

        Respectfully submitted,
        Fireaway, Inc.,
        By their attorneys,

        /s/   Kurt Rocha
        Kurt A. Rocha, #8591
        MELICK & PORTER

One Richmond Square, Suite 230E
Providence, RI 02906
401-522-5159
krocha@melicklaw.com

### **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on, July 15, 2024.

*/s/ Kurt A. Rocha*