UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| FEDERAL INSURANCE COMPANY, as subrogee of the TOWN OF WESTERLY, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| J. GALLANT ELECTRICAL SERVICES, INC. and THE HILLER COMPANIES, INC. d/b/a ADVANCED SAFETY SYSTEMS INTEGRATORS, INC., | ) ) ) ) ) ) | |
| Defendants/Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 1:22-cv-00123-MSM-LDA |
| PERIPHERAL MANUFACTURING INCORPORATED, alias, PERIPHERALS INC., alias, FIREWAY, LLC, alias, FIREAWAY INC., alias, JOHN DOE CORP. 1 THROUGH 10, JOHN DOE ENTITIES 1 THROUGH 10, and JOHN AND JANE DOE 1 THROUGH 10 | ) ) ) ) ) ) ) ) ) ) | |
| Third-party Defendants. | ) ) | |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

During a renovation at Westerly High School in 2020, a fire suppression system discharged in the school's server room, allegedly causing property damage of

more than $300,000. Federal Insurance Company, the Town of Westerly's insurer, filed this subrogation action against Advanced Safety Systems Integrators, Inc. ("Advanced"), the company leading the renovation, and J. Gallant Electrical Services ("Gallant"), Advanced's subcontractor hired to replace the server room's control panel. (ECF No. 1.) Gallant then sued the fire suppression system's manufacturer, Fireaway, Inc. ("Fireaway"), and its distributor, Peripheral Manufacturing Inc. ("Peripheral"), for contribution and indemnification. (ECF No. 25.)

Fireaway, a Minnesota-based company, now moves to dismiss the case, arguing that this Court lacks personal jurisdiction over it. (ECF No. 53.) For the reasons below, Fireaway's Renewed Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 53) is DENIED.

## I. BACKGROUND

Federal Insurance Company ("Federal") brought this action as a subrogee of its insured, Westerly. (ECF No. 1 ¶¶ 1, 9.) Federal alleges that Westerly hired Advanced to perform renovations at Westerly High School. *Id.* ¶ 11. The renovations included replacing the fire suppression sprinkler system in the school's IT server room. *Id.* ¶ 11. Advanced, in turn, hired Gallant to replace the control panel for the system. *Id.* ¶ 12. Federal alleges that while Gallant was working on September 3, 2020, one of its employees negligently caused an electrical short that set off the fire system, causing "catastrophic failure" to many electronic devices in the server room. *Id.* ¶¶ 13–14.

2

Federal compensated Westerly per the applicable insurance policy and brought this subrogation action against Advanced and Gallant, alleging negligence, breach of contract, and breach of express and implied warranties. *Id.* ¶¶ 14–17.

Gallant then filed a third-party complaint for contribution and indemnity against the system's manufacturer, Fireaway, and its distributor, Peripheral. (ECF No. 25.) While Federal asserts a negligence and breach of contract theory against Advanced and Gallant, Gallant asserts a products liability theory against Peripheral and Fireaway. *Id.* ¶¶ 22, 28, 33, 39. In other words, Gallant argues that the system allegedly failed not because Gallant negligently handled it, but because Fireaway's product was defective from the get-go. *Id.*

Fireaway, a Minnesota-based company, has twice moved to dismiss the claims against it for lack of personal jurisdiction. (ECF No. 33; No. 53.) This Court previously held that it could not exercise general personal jurisdiction over Fireaway, and it ordered Gallant to conduct jurisdictional discovery to determine whether the Court could exercise specific personal jurisdiction. (Order, Dec. 4, 2023.) Following the close of jurisdictional discovery, Fireaway has renewed its Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 53.)

## II. LEGAL STANDARD

When challenged, the plaintiff must show that the Court can exercise personal jurisdiction over an out-of-state defendant. *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 51 (1st Cir. 2020). And when a party challenges personal jurisdiction through a Rule 12(b)(2) motion and the Court has not held an evidentiary hearing, it applies

the prima facie standard. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022); *see Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007) (referring to this method as the "prima facie evidentiary standard"). Under this standard, the Court "acts not as a factfinder, but as a data collector" in determining "whether the plaintiff has proffered facts that, if credited, would support all findings essential to personal jurisdiction." *Chen*, 956 F.3d at 51 (cleaned up).

So Gallant must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). It cannot meet its burden on mere "conclusory averments" but must "adduce evidence of specific facts." *Chen*, 956 F.3d at 53 (internal citation omitted). This includes "facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." *Baskin-Robbins*, 825 F.3d at 34. The Court may also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

### III.   DISCUSSION

Here, subject-matter jurisdiction is based on diversity. (ECF No. 25 ¶ 7.) The Court thus acts as "the functional equivalent of a state court sitting in the forum state." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009). To exercise personal jurisdiction over Fireaway, the Court must determine that Fireaway's "contacts with the state satisfy both the state's long-arm statute as well

as the Due Process Clause of the Fourteenth Amendment." *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 258 (1st Cir. 2022). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, is "coextensive" with the Due Process Clause, meaning the constitutional analysis controls. *Astro-Med*, 591 F.3d at 8–9.

The constitutional standard is a familiar one. To satisfy the Due Process Clause, Fireaway must "have certain minimum contacts with [Rhode Island] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted). "As long as due process concerns are satisfied, a federal court may exercise either general or specific jurisdiction over a defendant." *Chen*, 956 F.3d at 55 (cleaned up).

### A.   General Jurisdiction

The Court already held that it could not exercise general jurisdiction over Fireaway. (Order, Dec. 4, 2023.) Still, Gallant insists that the Court can exercise general jurisdiction. (ECF No. 55-1 at 29.) But as the Court already explained:

> The record is clear that [Fireaway's] contacts with Rhode Island are not so continuous and systematic as to render [it] essentially at home here. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924 (2011). Fireaway is neither incorporated in nor has its principal place of business in Rhode Island and nothing here suggests that this is an exceptional case where nonetheless general jurisdiction is proper because it has business operations so substantial and such a nature as to render the corporation at home in Rhode Island. *See Kaun Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 57 (1st Cir. 2020).

(Order, Dec. 4, 2023.) Nothing Gallant offers following the close of jurisdictional discovery changes that finding, so the Court rejects that argument.

### B. Specific Jurisdiction

That leaves specific jurisdiction. For specific personal jurisdiction to attach, Fireaway must "purposefully avail[ ] itself" of the forum state and Gallant's claims "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotations omitted). Courts in the First Circuit use a three-part test to determine when specific personal jurisdiction arises:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016). In short, the specific jurisdiction analysis has three components: "relatedness, purposeful availment, and reasonableness." *Motus*, 23 F.4th at 122. The Court addresses these in turn.

#### 1. Relatedness

Relatedness requires Gallant to show a "demonstrable nexus" between its claim and Fireaway's forum-based activities. *Cappello v. Rest. Depot, LLC*, 89 F.4th 238, 245 (1st Cir. 2023). This "is a flexible, relaxed standard." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66 (1st Cir. 2014).

Fireaway argues that the relatedness standard is not satisfied for two reasons. First, the "transaction at issue" did not involve Fireaway's Rhode Island-based

6

distributor, so the claim does not "arise from or relate to" Fireaway's Rhode Island-based activities. (ECF No. 53-1 at 8–9.) Second, Fireaway argues it was too removed from the sale at issue for its conduct to be related to this case. *Id.* at 9–10. After all, it sold the system to Peripheral (based in Colorado), who then independently sold it to Smith Automatic Sprinkler (based in Connecticut), who then contracted with Westerly High School to install it. *Id.* at 9.

The Court disagrees on both points, because the Supreme Court rejected similar arguments in *Ford Motor Company v. Montana Eighth Jud. District Court*, 592 U.S. 351 (2021). Contesting personal jurisdiction in a products liability case arising from a car crash, Ford argued that specific jurisdiction attached only if Ford "had designed, manufactured, or—most likely—sold in the State the particular vehicle involved in the accident." 592 U.S. at 356.

But the Court refused to apply that strict causal test and instead held that "when a company like Ford serves a market for a product in the forum State and the product malfunctions there," the relatedness standard is satisfied. *Id.* at 363. In so holding, the Court examined "the business that the company regularly conducts" in the forum states. *Id.* at 364. For example, it looked at contacts with local distributors, sales in the forum, advertisements, and relationships directly with consumers, among other considerations. *Id.* at 365 ("Ford had advertised, sold, and serviced those two car models in both States for many years.").

And that holding was hardly cut from whole cloth. Drawing from a previous case, the Court explained:

> [I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.* at 363 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Or, rephrasing the standard, "if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York." *Ford Motor Co.*, 592 U.S. at 363.

With that reasoning in mind, the Court holds that this case is sufficiently related to Fireaway's forum state activities. Gallant's evidence establishes Fireaway's direct and indirect efforts to serve Rhode Island's market for fire suppression systems. Among the ranks of Fireaway's certified "distributor partners," who undergo training to sell and service its products, is Encore, a Rhode Island-based company. (ECF No. 53-2 at 79–92; No. 55-1 at 7; No. 55-5 at 2–3.) Fireaway's website lists Rhode Island as an area it serves, and it interacts with customers from Rhode Island through that website. (ECF No. 55-1 at 7; No. 55-5 at 2–3, 139–40.)

Most importantly, Fireaway has sent more than 30 orders directly to Rhode Island over the past thirteen years through several distributors, resulting in more than $80,000 in revenue.[1] (ECF No. 55-5 at 14.) That includes twelve sales to

---

[1] Fireaway notes, "Detailed Order records prior to 2011 have not been retained." (ECF No. 55-5 at 14.)

8

Peripheral, the distributor involved in this case, and another twelve sales to Encore, the Rhode Island-based distributor. *Id.* All that shows Fireaway's efforts to serve Rhode Island's market, both "directly" and "indirectly," for fire suppression systems. *Ford Motor Co.*, 592 U.S. at 363. While Rhode Island is far from its only market, its business has deliberately extended here, "among other states," for an extended period. *Id.*

Further, personal jurisdiction can still attach even though Fireaway did not sell the system at issue directly to Westerly High School. Of course, an in-state injury alone cannot by itself establish personal jurisdiction. *See, e.g.*, *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022). Nor can personal jurisdiction be established through a "same type of product" argument, either. *Cappello v. Rest. Depot, LLC*, 89 F.4th 238, 246 (1st Cir. 2023).

But here, there is more. Fireaway extended its business into Rhode Island, and its allegedly defective product malfunctioned in Rhode Island, even if the product took additional steps to get here. In *Ford Motor Company*, the Supreme Court explained that personal jurisdiction can arise when a company "deliberately" extends into one state, among others, even though the product at issue was designed, made, and sold in other forums. 592 U.S. at 363 (explaining that jurisdiction may arise in Oklahoma, for instance, "even though the vehicle had been designed and made overseas and sold in New York," if a manufacturer also does business in Oklahoma). Fireaway has contracted with a Rhode Island-based distributor, and at least ten orders from Peripheral, the out-of-state distributor involved in this case, have been

9

sent to Rhode Island. (ECF No. 55-5 at 14.) There are deliberate extensions on multiple fronts, then, and that is enough to satisfy the relatedness test.

### 2. Purposeful Availment

Next, the Court turns to purposeful availment. "Under the purposeful availment requirement, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 96 (1st Cir. 2024) (cleaned up). The inquiry focuses "on the defendant's intentionality," and it "rests on two cornerstones: voluntariness and foreseeability." *Id.* (internal citations omitted). "Achieving voluntariness demands that the defendant's contacts with the forum result proximately from its own actions." *Chen*, 956 F.3d at 59. Achieving foreseeability demands that "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (internal citations omitted).

Fireaway makes three arguments against purposeful availment. First, it argues that Gallant failed to cite conduct that shows Fireaway's "intent to serve the market in the forum state." (ECF No. 53-1 at 10–11.) Second, Fireaway posits that it resembles the manufacturer in *J. McIntyre Machinery v. Nicastro*, 664 U.S. 873 (2011), where the Supreme Court found no purposeful availment, more than the manufacturer in *Ford Motor Company*, where purposeful availment was obvious. *Id.* at 11–12. Finally, Fireaway's contacts with Rhode Island, it argues, have been "at most" "random and isolated." *Id.* at 12–13.

10

The first and third arguments fall short for the same reason: Gallant has provided evidence of Fireaway's intent to serve Rhode Island. As described above, that evidence includes a distributor based there, other distributors that sell there, about three-dozen sales linked directly to Rhode Island, and contacts with Rhode Island customers.[2] Its intent to serve the market is clear, and these contacts are far from random or isolated.

There are also key differences between Fireaway and the manufacturer in *Nicastro* that defeat Fireaway's second argument. For example, the foreign manufacturer in *Nicastro* worked with one American distributor to target the United States as a whole, and that distributor was neither located in the forum at issue, nor under the manufacturer's control. 664 U.S. at 878. But Fireaway works with a "distributor partner" based in Rhode Island and several more that have sold products here. (ECF No. 55-3 at 30.) And the contours of these relationships indicate that Fireaway, unlike the *Nicastro* manufacturer, has significant control over its distributors' actions. Under the Fireaway-Encore agreement, for instance, Encore had to provide Fireaway marketing forecasts, attend Fireaway trainings, and service Fireaway products for customers. (ECF No. 53-2 at 80–82.) Similar provisions exist in Fireaway's contract with Peripheral. (ECF No. 53-2 at 40–50.)

Perhaps the most important difference between this case and *Nicastro* is that the *Nicastro* manufacturer did "not have a single contact with the State apart from

---

[2] The number of sales may be higher too, given (1) that Fireaway does not have detailed order records prior to 2011 and (2) that Fireaway's sale in this case, for instance, may not count as a "Rhode Island sale." (ECF No. 55-5 at 14.)

11

the fact that the machine in question ended up there." 664 U.S. at 886. Fireaway has plenty more, as already detailed. Fireaway is thus hardly the defendant that the *Nicastro* Court worried about: the small Florida farmer who sells crops to a "large nearby distributor" and then ends up "sued in Alaska or any number of other States' courts without ever leaving town." 664 U.S. at 885.

Both the voluntariness and foreseeability elements are satisfied. Fireaway's Rhode Island sales arise from its own accord: its decision to contract with a local distributor and out-of-state distributors who send products to Rhode Island. *See Ford Motor Co.*, 592 U.S. at 368 (explaining that companies can restructure primary conduct to "lessen or even avoid" the costs of state-court litigation). And Fireaway's past business—often at least one Rhode Island sale annually—and its partnerships' presence and sales in Rhode Island satisfy the foreseeability requirement. ECF No. 55-5 at 14; *see, e.g.*, *Knox v. MetalForming, Inc.*, 914 F.3d 685, 691 (1st Cir. 2019) ("A defendant's regular flow or regular course of sale in the [forum] could make the exercise of jurisdiction foreseeable to the defendant.") (cleaned up).

Thus, the Court finds that Fireaway has purposely availed itself of Rhode Island.

**3. Reasonableness**

Finally, the Court turns to reasonableness. The First Circuit has provided five "gestalt" factors to guide the reasonableness inquiry:

> (1) the defendant's burden of appearing [in the forum], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining

>the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Knox*, 914 F.3d at 694 (internal citation omitted).  The First Circuit has also noted that "[t]he gestalt factors rarely seem to preclude jurisdiction where relevant minimum contacts exist." *Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 166 (1st Cir. 2022) (internal citation omitted).  This "is not one of those few-and-far-between cases." *Id.*

Fireaway only focuses on the first factor, the burden of out-of-state litigation. (ECF No. 63-1 at 14.)  But "for this factor to have any significance, a defendant must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way."  43 F.4th at 166 (internal citation omitted).  Fireaway does not make that special showing.  True, "mounting an out-of-state defense most always means added trouble and cost," but modern travel "creates no especially ponderous burden for business travelers." *BlueTarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 83 (1st Cir. 2013); *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994).

The second factor, the forum state's interest, favors adjudicating the case in Rhode Island.  The state has a strong interest in the dispute, given that it involves damage to a public school's property. *See, e.g.*, *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 211 (1st Cir. 1994) ("The forum state has a demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders.").  Nor does Fireaway dispute Rhode Island's interest in the matter.

13

The remaining factors all favor Rhode Island, too. As to the third, both the plaintiff and the third-party plaintiff's choice of forum should deserve deference, and Fireaway does not suggest that another forum would be more convenient for either. *See, e.g., Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir. 1995). As for the fourth factor, Gallant argues that the most effective resolution of the controversy is surely not to let a single third-party defendant out of an already-complex case, just for a parallel proceeding to arise in another forum. (ECF No. 55-1 at 35–36.) Fireaway offers no rejoinder.

And finally, as to the "common interests of all sovereigns in promoting substantive social policies," this fifth factor favors Rhode Island. Here, "the most prominent policy implicated is the ability of a state to provide a convenient forum . . . to redress injuries inflicted by out-of-forum actors." *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995). In other words, the most important policy here is Rhode Island's ability to provide a convenient forum for Federal Insurance, as a subrogee of the Town of Westerly, and Gallant, to redress in-state harms by out-of-state actors. This policy "assumes added importance in our age of advanced telecommunications, which has so facilitated the representation of geographically distant clients." *Allscripts Healthcare Sols., Inc.*, 43 F.4th at 167 (quoting *Sawtelle*, 70 F.3d at 1395).

On balance, then, the gestalt factors confirm that adjudication in a Rhode Island forum is reasonable. Considered alongside Gallant's adequate showing on the first two parts of the constitutional test, this Court's exercise of jurisdiction over Fireaway does not offend notions of fair play and substantial justice.

## IV.   CONCLUSION

For these reasons, Fireaway's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 53) is DENIED.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge
December 3, 2024